UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                  )
UNITED STATES OF AMERICA          )
                                  )
    Plaintiff,                    )
                                  )
    v.                            )
                                  )   Civil Action No. 05-2404 (RBW)
ONE HUNDRED FIFTY-NINE            )
THOUSAND AND FORTY ($159,040)     )
DOLLARS IN UNITED STATES          )
CURRENCY, et al.                  )
                                  )
    Defendants.                   )
_____)

## ORDER

On December 15, 2005, the United States filed a Verified Complaint in this case for Forfeiture In Rem ("Compl.") pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (C) (2000). Compl. ¶ 1. The complaint alleged that the defendant properties, $159,040.00 in United States currency and a 2002 BMW 745 LI sedan, VIN:WBAGN63452DR02119, were involved in money laundering and constitute or are derived from proceeds traceable to "a specified unlawful activity" proscribed by "the federal anti-money laundering statutes." Id. ¶¶ 1-4. A Warrant for Arrest In Rem was issued on December 15, 2005, and the properties were subsequently seized by the United States. On February 1, 2006, Duane McKinney ("McKinney") filed a Petition for Remission or Mitigation of Forfeiture ("Claimant's Pet."), in which he declared under penalty of perjury that the defendant properties belonged to a non-profit organization registered in the District of Columbia called The Brotherhood of Men, Inc. ("The Brotherhood"), of which McKinney is the President. McKinney Pet. at 1. On February 6, 2006, McKinney filed a Motion

for the Return of the Seized Property Pursuant to 18 U.S.C. § 983 (2000) ("Petr's First Mot."), apparently acting in his official capacity as president of The Brotherhood, but describing himself as owner of the seized property. Petr's First Mot. at 1. The government responded by filing an Opposition to Petition for Release of Seized Property ("Pl.'s First Opp'n"), contending that McKinney was "not a proper claimant and, therefore, he is without standing to bring this request." Pl.'s First Opp'n at 4.

In response to these filings, this Court denied McKinney's motion filed on behalf of The Brotherhood on the grounds that McKinney was proceeding pro se and corporations may only appear in federal court through the representation of licensed attorneys. United States v. $159,040.00 In United States Currency, No. 05-2404 (RBW) (D.D.C. April 10, 2006) (order denying Motion for the Return of Seized Property) (citing Flynn v. Thibodeaux Masonry, Inc., 311 F. Supp. 2d 30, 37 (D.D.C. 2004)). The Court also noted that denial of the motion was also proper because there was no indication that McKinney had complied with the procedures set forth in 18 U.S.C. § 983 regarding the return of seized property.

On February 21, 2006, McKinney filed a Verified Answer to Information and Notice of Forfeiture and Motion for Return of Seized Property ("Pet.'s Second Mot."). It is unclear whether the filing was made on behalf of The Brotherhood or McKinney alone. The introductory paragraph seemingly attempts to justify McKinney's standing by asserting that he is the President of The Brotherhood, Pet.'s Second Mot. at 1, but the body of the motion suggests that McKinney himself is the owner of the seized property. Id. ¶ 1 (claiming that McKinney, rather than The Brotherhood, is the lawful owner of the seized motor vehicle); id. at 2 (requesting that the

currency and motor vehicle be returned to his possession, rather than to The Brotherhood's possession).

On June 5, 2006, McKinney filed another motion ("Pet.'s Third Mot.") in this Court for the return of the seized property. In this motion, McKinney is seemingly proceeding purely on behalf of himself, as the The Brotherhood is mentioned nowhere in the motion. Pet.'s Third Mot. at 1-2. In this final motion, McKinney asserts that the seized property was not the product of any crimes comitted by McKinney, id. ¶ 2, but rather was derived from lawful business activities. Id. ¶ 4. McKinney further contends that he has made an attempt to gain return of the seized property through a direct meeting with the government.

In support of his contentions, McKinney has provided the Court with a number of attachments, including the articles of incorporation for The Brotherhood, transactions from The Brotherhood's corporate bank account, as well as settlement statements, business contracts, and receipts purporting to reflect payment to McKinney in return for services rendered. Pet.'s Second Mot., Attachments. It also included McKinney's personal business license for operating a construction company. Id.

The government responds to McKinney's two most recent motions collectively in its Opposition to Motions for Return of Seized Property ("Pl.'s Second Opp'n). The government argues that McKinney does not have standing to bring this action. Pl.'s Second Opp'n at 3. The government notes that McKinney failed to establish "statutory standing" in this case because he did not file a verified claim with the Court within 30 days after service of the Verified Complaint, and further failed to file an answer to the Verified Complaint within 20 days after the date of filing his verified claim. Id. at 3 (citing 18 U.S.C. § 983(a)(4)(A)). Furthermore, the government asserts that McKinney lacks Article III standing, pointing out the McKinney has

previously claimed that the seized properties belong to The Brotherhood and has now, the government contends, "convert[ed] ownership of the properties to himself" in "an effort to circumvent the Court's Order . . . requiring the corporation to obtain legal representation." Id. at 4.

18 U.S.C. § 983 provides two avenues for a person to gain release of property seized in an in rem proceeding. Under 18 U.S.C. § 983(f)(1),

> (1) A claimant . . . is entitled to immediate release of seized property if --
>
>> (A) the claimant has a possessory interest in the property;
>>
>> (B) the claimant has sufficient ties to the community to provide assurance that the property will be available at the time of the trial;
>>
>> (C) the continued possession by the Government pending the final disposition of forfeiture proceedings will cause substantial hardship to the claimant, such as preventing the functioning of a business, preventing an individual from working, or leaving an individual homeless;
>>
>> (D) the claimant's likely hardship from the continued possession by the Government of the seized property outweighs the risk that the property will be destroyed, damaged, lost, concealed, or transferred if it is returned to the claimant during the pendency of the proceeding; and
>>
>> (E) none of the conditions set forth in paragraph (8) applies.

18 U.S.C. § 983(f)(1). And paragraph (8) states that the requirements set out in section 983(f)(1) shall not apply to claims for seized property if the property in question is "contraband, currency, or other monetary instrument, or electronic funds unless such currency or other monetary instrument of electronic funds constitutes the assets of a legitimate business which has been seized . . . ." 18 U.S.C. § 983(f)(8)(A). A claimant seeking release of property under 18 U.S.C. § 983(f) must "request possession of the property from the appropriate official, and the request

must set forth the basis on which the requirements of [section 983(f)(1)] are met." 18 U.S.C. § 983(f)(2). If the property is not returned within 15 days after the request from the appropriate government official was made, "the claimant [, within the 15 day period,] may file a petition in the district court in which the complaint has been filed . . . ." 18 U.S.C. § 983(f)(3)(A). This petition must include "the basis on which the requirements of [section 983(f)(1)] are met . . . and the steps the claimant has taken to secure release of the property from the appropriate official." 18 U.S.C. § 983(f)(3)(B).

In this case, it seems that McKinney met with a government official to discuss the return of the property, see Pl.'s Second Opp'n at 3 n.2; Pet.'s Third Mot. § 6, and that a motion was filed in this Court within fifteen days of that meeting. Pet.'s Mot. (filed June 5, 2006). However, McKinney's motion for the return of the seized property must be denied under section 983(f) for the following two reasons.

First, McKinney's claim for the return of the seized currency clearly falls into the exception of section 983(f)(A)(8). Under this exception, a claimant may only petition for the return of seized currency if it "constitutes the assets of a legitimate business which has been seized." 18 U.S.C. § 983(f)(A)(8). There seems to be two interpretations of section 983(f)(A)(8). The plain language of the statute would seem to suggest that currency may only be recovered when a legitimate business has been seized. Under this interpretation, McKinney's claim must fail because the government has not seized The Brotherhood, rather, it has only seized assets that McKinney claims are related to activities and operations of The Brotherhood. Compl. ¶¶ 3-4; Pet.'s Third Mot. ¶ 4. An alternative interpretation is that a claimant may recover seized funds if they are the proceeds of a legitimate business. United States v. $1,231,349.68 In

5

Funds, 227 F. Supp. 2d 125, 129 (D.D.C. 2002).  Here, McKinney claims that the seized funds are proceeds from the legitimate activities of The Brotherhood, Pet.'s Third Mot. ¶ 4, while the government claims that the funds are traceable to an alleged scheme by McKinney "to defraud owners of real property by transferring the owners' . . . interests in their property to [The Brotherhood], without their knowledge or permission, and then selling the properties and pocketing the sales proceeds."  Pl.'s First Opp'n at 9.  The Court finds that McKinney has not carried his burden of showing that the seized currency are the proceeds of a legitimate business.  Although McKinney has submitted a large amount of documentation to establish The Brotherhood's existence, Pet.'s Second Mot., Attachments, he fails to provide any evidence refuting the government's allegations.  The settlement statements and receipts provided by McKinney, id., could just as likely be the result of fraudulent activities as they could legitimate business activities.  Furthermore, nowhere in the plaintiff's papers is there provided a business location or legitimate mailing address for The Brotherhood.  Therefore, because McKinney has failed to demonstrate that The Brotherhood is a legitimate business, the Court must conclude that his claim fails under this second interpretation of 18 U.S.C. § 983(f)(A)(8).  See $1,231,349.68 In Funds, 227 F. Supp. 2d at 129.

       Second, McKinney's motion, as it relates to the release of both the currency and the seized automobile, must also be denied because McKinney has failed to satisfy the requirement of section 983(f)(1)(B).  Even construing the facts in the light most favorable to McKinney, he has failed to show that he "has sufficient ties to the community to provide assurance that the property will be available at the time of the trial."  18 U.S.C. § 983(f)(1)(B).  Nowhere in McKinney's filings does he provide a valid address or telephone number for himself or The

Brotherhood. And there are no records that McKinney has earned any income for the past two years. Pl.'s Opp'n at 6. In the absence of this information, there is no recourse available to the government to ensure that the funds will be available for trial if they are released. Moreover, despite McKinney's efforts to provide this Court with proof that The Brotherhood is a viable entity, he is unable to provide any proof that the organization is not simply a shell for the unlawful activities alleged by the government in its Complaint. Due to McKinney's failure to establish viable, sufficient ties to the community, the Court is not convinced that the defendant properties will be available for trial. Cf. $1,231,349.68 In Funds, 227 F. Supp. 2d at 128 (finding that a claimant who had maintained a residence in Maryland for twenty-two years, was currently unemployed but had fourteen years of previous employment, and had a daughter that resided with her when not in college, was not a flight risk and had therefore demonstrated sufficient ties to the community). Therefore, McKinney's motions for the return of the seized property must be denied under 18 U.S.C. § 983(f).

The second avenue by which a person may petition for the release of seized property is governed by 18 U.S.C. § 983(a)(4)(A). Under this section, "any person claiming an interest in the seized property may file a claim asserting such person's interest in the property in the manner set forth in the Supplemental Rules for Certain Admiralty and Maritime Claims, except that such claim may be filed not later than 30 days after the date of service of the Government's complaint . . . ." 18 U.S.C. § 983(a)(4)(A); see also Rule C(6), Supplemental Rules for Certain Admiralty and Maritime Claims.[1] in Furthermore, a person who pursues this method for gaining the release

---

[1] Although § 983(a)(4)(A) incorporates the Supplemental Rules for Certain Admiralty and Maritime Claims, its application is not limited to those types of claims. See, e.g., United States v. Funds from Prudential
(continued...)

7

of seized property "shall file an answer to the Government's complaint for forfeiture not later than 20 days after the date of the filing of the claim." 18 U.S.C. § 983(a)(4)(B).

The government concedes that notice of the civil and administrative proceedings sent to McKinney have been returned by the postal service due to a lack of proper mailing address. Pl.'s First Opp'n at 3-4. However, the government argues that McKinney clearly has notice of these proceedings because an attorney has contacted the government on McKinney's behalf. Id. at 4. Be that as it may, the government has failed to provide evidence of when McKinney received notice. Therefore, there is no way of ascertaining whether McKinney's initial filing was within the 30 day period after notice has been received that as required by 18 U.S.C. § 983(a)(4)(A) (2000). Thus, the Motions cannot be dismissed on those grounds.

However, McKinney did not file an answer to the Verified Complaint until April 21, 2006, approximately two months after the statutory deadline to file an answer. 18 U.S.C § 983(a)(4)(B). Furthermore, the claim initially filed in this Court by McKinney asserted that the seized property belonged to The Brotherhood rather than himself. Claimant's Pet. at 1. Therefore, McKinney did not file a timely verified claim with the court and he failed to assert his interest in the seized property. Thus, this Court must conclude that McKinney does not have standing to challenge the government's seizure of the defendant property. See United States v. $1,437.00 U.S. Currency, 242 F. Supp. 2d 193, 196 (W.D.N.Y. 2002) (holding that the claimants "fail[ure] to file a verified claim and answer within the time period specified in [18 U.S.C. § 983(a)(4)] and Rule C(6) of the Supplemental Rules" precluded recovery of seized funds).

---

[1](...continued)
Securities, 300 F. Supp. 2d 99, 103 (D.D.C. 2004).

Therefore McKinney's motions for the release of the seized property must be also be denied under 18 U.S.C § 983(a)(4).

For the reasons stated above, it is hereby

**ORDERED** that the Claimant's Motions for the Return of Seized Property is DENIED.

**SO ORDERED** on this 1st day of August, 2006.

REGGIE B. WALTON<br>United States District Judge